Case 4:20-cv-00334   Document 30   Filed on 10/30/23 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
October 30, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KARL BRUECKNER, *et al.*, | § |
| Plaintiffs. | § § § |
| V. | § CIVIL ACTION NO. 4:20-cv-00334 |
| THE HERTZ CORPORATION, *et al.*, | § § § |
| Defendants. | § |

## MEMORANDUM AND RECOMMENDATION

Pending before me is a Motion to Remand by Plaintiffs Karl Brueckner and Jennifer Lakowsky-Brueckner, appearing individually and as legal representatives of their minor child, A.B., and the estate of their minor child, P.B. ("the Brueckners"). Dkt. 15. Defendants The Hertz Corporation ("Hertz"); Rental Car Finance, LLC; and Thrifty Rent-A-Car System, LLC (collectively, "Defendants") oppose the motion. Having reviewed the briefing, the record, and the applicable law, I recommend the Motion to Remand be **GRANTED**, and this matter returned to the 334th Judicial District Court of Harris County, Texas.

## BACKGROUND

This lawsuit arises out of a deadly car accident that occurred on July 10, 2017. While on vacation in Panama, the Brueckners and their two minor children rented a Toyota Fortuner ("the Vehicle") from Hertz's Panamanian franchisee. While driving the Vehicle, the Brueckners and their children hit a puddle of water causing the car to hydroplane into a tree and roll multiple times. Three of the vehicle's occupants were seriously injured and P.B., the Brueckners' eldest child, died as a result of injuries sustained in the crash.

On July 10, 2018, the Brueckners filed suit against Defendants—citizens of Delaware and Florida—in the 334th Judicial District of Harris County, Texas. In addition to Defendants, the Brueckners also sued Toyota Motor Corporation and

Toyota Motor North America, Inc. (collectively "Toyota"). For diversity purposes, Toyota is a citizen of California, Texas, and Japan. The Brueckners are residents of Texas.

On August 13, 2018, Toyota Motor Corporation filed a Special Appearance, and Toyota Motor North America, Inc. filed a motion to transfer venue. Just a few months later, on November 4, 2018, the Brueckners, Defendants, and Toyota attended mediation. At some point after the mediation, the Brueckners and Toyota agreed to settle the Brueckners' claims. On April 11, 2019, the Brueckners and Toyota agreed on all terms of a settlement sheet. On May 23, 2019, Toyota's counsel forwarded a draft release to the Brueckners' counsel. Toyota's counsel followed up with the Brueckners' counsel three times over the next seven weeks without receiving a response. On July 8, 2019—two days before the one-year statutory deadline for removing the case to federal court—the Brueckners' counsel sent revisions to the release to Toyota's counsel. Language agreeable to all sides was not finalized until November 8, 2019. Further revisions regarding the surviving minor child A.B.'s claim and structured settlement were necessary, and that language was not resolved and agreed to until December 17, 2019. The Brueckners finally executed their settlement agreement with Toyota on January 6, 2020. The court approved the settlement of A.B.'s claim on January 10, 2020. The Agreed Final Judgment entered by the state court provides: "the Toyota Defendants . . . are hereby **DISMISSED WITH PREJUDICE**." Dkt. 27-5 at 4.

On January 29, 2020, Defendants removed the Brueckners' case to federal court, arguing that the one-year statutory bar on removal did not apply due to the Brueckners' failure to prosecute their claims against Toyota following mediation and to timely finalize their settlement with Toyota. In accordance with this Court's local rules, the Brueckners requested a pre-motion conference before filing a motion to remand. Judge George C. Hanks, Jr. permitted limited discovery— agreed to by the parties—regarding the Brueckners' negotiations and ultimate settlement with Toyota. Following that discovery, on May 19, 2020, the Brueckners

moved to remand, arguing that (1) Toyota had not been dismissed from the state court action at the time of Defendants' removal and thus complete diversity was lacking when the case was removed; (2) because Toyota was, according to the Brueckners, still a defendant in the state court action, its consent—which was not given—was required to remove the case; and (3) even if Toyota had been dismissed—meaning that its consent was not required and the parties were completely diverse at the time of removal—removal was barred by one-year statutory deadline for removal.

On May 28, 2020, Defendants filed suggestions of bankruptcy, after which this case was stayed and administratively closed from May 29, 2020 until December 22, 2022. Once the stay was lifted, Defendants responded to the Brueckners' motion to remand and the Brueckners filed a reply. The question of whether this case should be returned to state court is ripe for decision.

## LEGAL STANDARD

The federal removal statute generally permits a defendant to remove any civil action to federal court that falls within the original jurisdiction of the district courts. *See* 28 U.S.C. § 1441(a). One such grant of authority is found in the diversity jurisdiction provision of 28 U.S.C. § 1332(a), which provides district courts with original jurisdiction over "all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). Jurisdiction under this statute requires complete diversity, meaning that no plaintiff can be a citizen of the same state as any defendant. *See Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 814 (5th Cir. 1993).

When an action that could have been filed in federal court is filed in state court, a defendant may remove that action to federal court "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading." 28 U.S.C. § 1446(b)(1). The party removing a case to federal court bears the burden of establishing that removal is proper. *See Gaitor v. Peninsular & Occidental S. S.*

*Co.*, 287 F.2d 252, 253 (5th Cir. 1961) (collecting cases and holding that "the burden of establishing jurisdiction rests upon the party seeking to invoke it").

If a state court action is not originally removable, but later becomes removable—*e.g.*, with the dismissal of the non-diverse defendant(s)—a defendant may remove the case to federal court within 30 days of receiving notice that the case has become removable. *See* 28 U.S.C. § 1446(b)(3). But if it has been more than one year since the commencement of the action, the case may only be removed if "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." *Id.* § 1446(c)(1). "[D]oubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

"Before 2011, § 1446 prohibited defendants . . . from removing a case 'more than 1 year after commencement of the action'—full stop." *Hoyt v. Lane Constr. Corp.*, 927 F.3d 287, 293 (5th Cir. 2019) (quoting 28 U.S.C. § 1446(b) (2006)). Courts split on whether § 1446 allowed for equitable tolling or estoppel, with the Fifth Circuit concluding there was an equitable exception in *Tedford v. Warner-Lambert Co.*, 327 F.3d 423 (5th Cir. 2003). "Congress resolved the conflict" among courts when it amended § 1446 in 2011 "[b]y adding the bad-faith exception to the one-year deadline." *Hoyt*, 927 F.3d at 293. "If Congress wanted to resolve the conflict by adopting the *Tedford* standard, it could have done so." *Id.* But it did not. *See id.* at 294 (explaining why the new statutory bad-faith exception cannot be the same as *Tedford*'s equitable exception). Thus, the Fifth Circuit presumes that the "bad faith" standard "carries with it a choice of different meaning" than the equitable exception articulated in *Tedford*. *Id.* at 294.

Unfortunately, the Fifth Circuit has not expounded upon what "bad faith" means, other than to say that "the question is what motivated the plaintiff *in the past*—that is, whether the plaintiff's litigation conduct meant 'to prevent a defendant from removing the action.'" *Id.* at 293 (quoting § 1446(c)(1)); *see also*

4

H.R. REP. NO. 112-10, at 15 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 576, 580 ("The inclusion in the new standard of the phrase 'in order to prevent a defendant from removing the action' makes clear that the exception to the bar of removal after one year is limited in scope."). That "bad faith" requires looking for willfully obstructive behavior on the plaintiff's part is bolstered by § 1446(c)(3)(B), which states that if "the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith."

In 2014, United States District Judge James O. Browning became the first judge in the nation to tackle the meaning of "bad faith" following Congress's amendment of § 1446. In a lengthy and detailed opinion, Judge Browning concluded:

> A plaintiff's "bad faith" can manifest itself in either of the two requirements for diversity jurisdiction: (i) a plaintiff can name or retain nondiverse parties or forum-citizen defendants to defeat complete diversity or the forum-defendant rule, respectively; or (ii) it can obfuscate the quantity of damages it seeks for the purpose of defeating the amount-in-controversy requirement.

*Aguayo v. AMCO Ins. Co.*, 59 F. Supp. 3d 1225, 1261 (D.N.M. 2014). The latter is not at issue here, and "§ 1446(c)'s text says nothing at all about (i), nor has any court attempted to comprehensively define it." *Id.* at 1262. So, Judge Browning in *Aguayo* devised the following two-step standard for ascertaining when a plaintiff has retained a nondiverse party (i.e., "removal spoiler") in bad faith:

> First, the Court inquires whether the plaintiff actively litigated against the removal spoiler in state court: asserting valid claims, taking discovery, negotiating settlement, seeking default judgments if the defendant does not answer the complaint, et cetera. Failure to actively litigate against the removal spoiler will be deemed bad faith; actively litigating against the removal spoiler, however, will create a rebuttable presumption of good faith. Second, the defendant may attempt to rebut this presumption with evidence . . . that, despite the plaintiff's active litigation against the removal spoiler, the plaintiff would not have named the removal spoiler or would have dropped the spoiler before the one-year mark but for the plaintiff's desire to keep the case in state court.

*Id.* at 1262–63. "If the plaintiff shows that he or she pursued *any* of these ends, then the Court will presume that the plaintiff acted in good faith." *Id.* at 1265 (emphasis added). I will apply this two-step standard to determine whether the Brueckners retained Toyota in bad faith.[1]

## ANALYSIS

The Brueckners advance three arguments as to why this case should be remanded to state court. I need address only one of them—that the case was impermissibly removed more than 18 months after the state court action was filed, and that Defendants fail to establish that the Brueckners acted in bad faith to prevent Defendants from removing the action to federal court.[2] Defendants contend they have established bad faith by pointing to: (1) the Brueckners' failure "to prosecute their claims against [Toyota]" after the mediation; (2) the 46-day delay between Toyota sending a draft release to the Brueckners' counsel and the Brueckners' counsel finally responding on July 8, 2019, two days before the one-year statutory deadline for removal; and (3) the "delayed entry of the Final Judgment from July 18, 2019 until January 10, 2020." Dkt. 27 at 12. I disagree.

Under the two-step standard articulated in *Aguayo*,[3] my first question is whether the Brueckners actively litigated against Toyota in state court. In *Aguayo*,

---

[1] Judge Browning's standard prohibits removing defendants from receiving discovery or an evidentiary hearing to obtain evidence of bad faith. *See id.* ("The defendant may introduce direct evidence of the plaintiff's bad faith at this stage—*e.g.*, electronic mail transmissions in which the plaintiff states that he or she is only keeping the removal spoiler joined to defeat removal—but will not receive discovery or an evidentiary hearing in federal court to obtain such evidence."). Here, however, I will consider the limited discovery permitted by Judge Hanks and agreed to by the parties. *See* Dkts. 12–13.

[2] I assume, without deciding, that the Agreed Final Judgment entered by the state court on January 10, 2020 effectively dismissed Toyota from the state court proceedings such that there was complete diversity between the parties at the time of removal, and Toyota's consent to removal was not required.

[3] Although Defendants mention bad faith, the majority of cases they cite predate the 2011 amendment of § 1446 and the Fifth Circuit's admonition that *Tedford* "does not control." *Hoyt*, 927 F.3d at 293. For example, Defendants cite *Jackson v. Alsco, Inc.*, No. 4:19-cv-1101, 2019 WL 2250942 (S.D. Tex. May 24, 2019), for the proposition that "[c]ourts have held that the standard for showing bad faith is comparable to that for establishing

"asserting valid claims" and "negotiating settlement" were among the non-exhaustive list of actions that Judge Browning considered part of "active litigation." 59 F. Supp. 3d at 1262. Pursuing "*any* of these ends" results in a presumption of good faith. *Id.* at 1265. Defendants do not dispute that the Brueckners asserted valid claims against Toyota and negotiated a settlement with Toyota. Thus, I presume that the Brueckners acted in good faith, and I next ask whether Defendants have rebutted that presumption. *See id.*

Defendants' argument centers on what they perceive to be the Brueckners' dilatoriness in finalizing their settlement with Toyota while neglecting other aspects of their litigation against Toyota. Defendants emphasize that the Brueckners "undertook no discovery regarding [Toyota]" (Dkt. 27 at 6) and "did not respond to the Toyota Defendants' motion to transfer venue or Special Appearance," filed in state court. *Id.* at 12. This is not evidence of bad faith because, as the Brueckners explain, the reason they did not issue written discovery, notice depositions, designate experts, or respond to the pending motions after mediation is because their focus was on ironing out release language to resolve their dispute with Toyota. Toyota *also* did not pursue discovery or take any action on the outstanding motions after the mediation, providing further evidence that the parties were mutually focused on their settlement negotiations.

The 46-day delay between Toyota's counsel sending the draft release and the Brueckners' counsel responding is certainly suspicious, given that the Brueckners' counsel responded a mere two days before the one-year statutory deadline for

---

equitable tolling under *Tedford*." Dkt. 27 at 13. But *Jackson* was decided 17 days *prior* to the Fifth Circuit issuing its opinion in *Hoyt*, in which the Fifth Circuit stated that it would "therefore no longer apply the old § 1446 and the *Tedford* exception [it] created." *Hoyt*, 927 F.3d at 294. Following *Hoyt*, courts in this district recognize that "cases that rely on the 'equitable tolling' exception articulated by the Fifth Circuit in *Tedford*" have been "superseded." *Bennett v. United Rentals (N. Am.), Inc.*, No. 3:19-cv-00270, 2019 WL 5293544, at *3 (S.D. Tex. Oct. 18, 2019). "Although, admittedly, cases applying the equitable-tolling exception may still inform this Court's decision under the bad-faith standard because, in most cases where there was bad-faith conduct on the part of the plaintiff, equity will have demanded tolling the one-year limitation period." *Id.*

7

removal. But I must resolve all contested factual issues in the Brueckners' favor. The fact that it took another five months to finalize the language related to A.B.'s claim and structured settlement (*see* Dkt. 15-3 at 2), and another six months to execute the settlement agreement, suggests that the delay in finalizing the Brueckners' settlement with Toyota was not gamesmanship. Indeed, the uncontroverted affidavit of the Brueckners' counsel notes that "multiple drafts and revisions were exchanged between the parties" in the "intervening months" following the parties' agreement on the draft release. *Id.* That is not bad faith—that is the ordinary course of negotiating a settlement for an entire family, including a structured settlement for a minor child.

"Bad faith exists where the plaintiff has no intention of pursuing judgment against the non-diverse defendant and instead joins and keeps that defendant in the case for the purpose of thwarting removal." *Keller Logistics Grp., Inc. v. Navistar, Inc.*, 391 F. Supp. 3d 774, 779 (N.D. Ohio 2019). Accordingly, it is bad faith for the plaintiffs' principal to admit to the non-diverse defendant that it is being sued solely to keep the action in state court "without ever once engaging the [non-diverse defendant] in settlement discussions." *Id.* at 780. It is bad faith to dismiss "for free" a defendant "a mere two days after the one-year deadline expired" when the plaintiffs "knew months beforehand that the evidence would not support the claims against [that defendant]." *Hoyt*, 927 F.3d at 292–93. It is not, however, bad faith to have "hammered out the terms of [a monetary] settlement agreement" but delay "filing [a] stipulation of dismissal." *Aguayo*, 59 F. Supp. 3d at 1283. "Provided that the plaintiff has colorable claims against the defendant . . . obtaining a settlement from the defendant, even if the plaintiff has already decided that it would not under any circumstances be economical to take the defendant to trial," is one of the "permissible purposes for naming and keeping a defendant in a case." *Id.* at 1264–65. That is what happened here.

The Brueckners brought and settled—for money, not for free—colorable claims against Toyota. The fact that it took a little over a year to finalize that

8

settlement is not evidence of bad faith. Accordingly, § 1446(c)(1)'s one-year bar necessitates remanding this case back to state court.

## CONCLUSION

For the reasons stated above, I recommend the Brueckners' Motion to Remand (Dkt. 15) should be **GRANTED** and this case remanded to the 334th Judicial District Court of Harris County, Texas.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 30th day of October 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE